UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | DOCKET NO: 2:13CR 15-1 |
| | ) | |
| v. | ) | |
| | ) | **BRIEF IN SUPPORT OF** |
| JEROME BROCK PARKER, | ) | **MOTION TO DISMISS** |
| Defendant. | ) | **INDICTMENT** |
| _____ | ) | |

Now comes the Defendant, by and through counsel, pursuant to this Court's Order of November 21, 2013, and offers the following Brief in support of his Motion to Dismiss the Indictment against him:

ARGUMENTS

As to this Court's determination as to whether subject matter jurisdiction exists, the Defendant requests that this Court find guidance by the holding of the District Court for the Middle District of Alabama in *United States v. White,* 597 F.2nd 1269 (M.D. Ala. Dist. Ct. 2009), under which the District Court stated, "*The burden of proof the is on the federal government to establish federal subject matter jurisdiction beyond a reasonable doubt. In determining whether federal jurisdiction exists the Court's examine the sufficiency of the evidence offered by the government and whether the government has provided that jurisdictional element and that element must be established beyond a reasonable doubt.*"

Furthermore, the Eleventh Circuit Court of Appeals has stated, in U*nited States v. Barnes,* 681 F.2d 717, 722(11th Cir. 1982), by holding *"Proof of jurisdiction or essential elements of any crime in the sense that the burden is on the government to prove their existence."*

Lacey Act Does Not Apply to Create Jurisdiction

The Fourth Circuit Court of Appeals, in *United States v. Dove,* 247 F.3d 152 (4th Cir. 2001) held,

> The Lacey Act is a federal statute that imposes federal penalties for certain violations of state law, and provides in part that it is unlawful for any person "to import, export, transport, sell, receive, acquire, or purchase in *interstate or foreign commerce* . . . any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State." 16 U.S.C.A. S 3372(a)(2)(A)… The standard which must be met to satisfy the **"interstate commerce"** aspect of the Lacey Act is not a demanding one…and the Lacey Act is not violated unless the animal parts which move in *interstate commerce* have been "taken, possessed, transported or sold" in violation of state law.

In *United States v. Atkinson,* 966 F.2d 1270, (9th Cir. 1992), the Ninth Circuit Court of Appeals, held,

> The Lacey Act makes it unlawful to sell or transport in interstate commerce wildlife taken in violation of state law. 16 U.S.C. § 3372(a)(2)(A). Under this section, a person "sells" wildlife in violation of the Act whenever, for money or other consideration, he offers or provides "guiding, outfitting, or other services" or "a hunting or fishing license or permit" for the illegal taking of wildlife. 16 U.S.C. 3372(c)(1)… At the end of each hunt, [the defendant] either arranged to ship the deer carcasses to hunters' homes outside the State of Montana, or assisted the hunters in these shipments. This satisfies the Act's interstate commerce requirement. See United

States v. Gay-Lord, 799 F.2d 124, 126 (4th Cir.1986) (Lacey Act satisfied when defendant "knew that wildlife would be transported in interstate commerce and took the steps that began their travel to interstate markets").

The government contends that the Lacey Act was violated by the activities alleged on October 24, 2011. However, regardless of whether such bear was killed upon property of the United States, the record produced clearly establishes that such bear was not removed from the site of kill by any Defendant, or even the covert operative. Therefore, the bear killed on October 24, 2011, never left the State of North Carolina and was never transported in interstate commerce.

The only evidence produced by the government concerning a second bear hunt alleged to have occurred on October 27, 2011 clearly shows that such hunt was initiated by Officer Chad Arnold in the State of Georgia, without the assistance of the Defendant. The government produced a statement by Officer Chad Arnold, as set forth as Attachment Number Nine, page ten of fourteen of the government's investigative report, which contains the following quoted language, "On October 27th at approximately 1600, MO CR Arnold placed a covert telephone call to Walt Stancil to set up a bear hunt. Walt answered the telephone and Arnold said, "Jinks (Jerry Parker) told him that he had a bear problem. Walt then said he knew where one was. He then asked Arnold if he wanted to go and see." Thereafter, Arnold killed a bear at a location unknown to the Defendants, and under circumstances that the government has not produced evidence to

indicate could have possibly been within the knowledge of Defendant. The bear was thereafter transported by Arnold from an unknown location to the residence of co-Defendant, Jerry Parker, without the knowledge of the Defendant, where Arnold skinned the bear and processed the meat. After skinning the bear and processing the meat on October 27, 2011 Arnold left the meat and hide at the residence of co-Defendant, Jerry Parker, to which the Defendant had no knowledge, until the following day, October 28, 2011. On October 28, 2011 at approximately 7:00 a.m., as stated in the government's report, Arnold drove to co-Defendant, Jerry Parker's residence and attempted to locate Jerry Parker, but was unable to locate him. (See Attachment #9 pages 13 of 17 of the government's investigative report). Defendant had absolutely no knowledge of these activities. Furthermore, Arnold was the only individual who transported any portion of the bear alleged to have been illegally taken at any time from the residence of Jerry Parker. The government has produced no evidence to establish that Defendant had any knowledge that Arnold arraigned a second bear hunt with Walt Stancil, that Arnold went hunting in Georgia, that Arnold engaged in any illegal activity, or what, if anything, Arnold intended to do with the bear hide, or meat, at that time. This activity, as contained in the government's own report, cannot be construed to give rise to federal jurisdiction as it does not indicate a violation of the Lacey Act.

Furthermore from this language it is clearly evidenced that the activity on October 27, 2011 was a separate and distinct hunt unrelated to the activities of October 24, 2011 and unrelated to alleged overt or illegal act engaged in by the Defendant on October 24, 2011. There has been absolutely no evidence presented by the government to indicate that Defendant had any knowledge of the activities occurring in October 27, 2011 in any form. As such, the government has failed to produce sufficient evidence to link such acts as an ongoing "inter-state" conspiracy that would give rise to federal jurisdiction under the Lacey Act.

Based upon the government's own disclosures, as stated under its investigative report, the government has failed to establish the necessary elements of knowledge, intent, or agreement by the Defendant beyond a reasonable doubt which is required in order to invoke federal jurisdiction under the Lacey Act. The Defendant thereby respectfully requests that this Court enter a Judgment dismissing the indictment against him as the government has failed to establish federal subject matter jurisdiction under the Lacey Act.

Furthermore, the government has failed to produce evidence sufficient to allow the location of any purported federal land in North Carolina as the site of any unlawful act that would give rise to jurisdiction under the Assimilated Crimes Act, 18 USC 13. The government has failed to produce sufficient documentation establishing the areas subject to certain exceptions, reservations, and exemptions

that apply to the land whereon it contends alleged acts of October 24, 2011 occurred and that it has jurisdiction over such land beyond a reasonable doubt. Therefore, the Defendant respectfully requests that this Court enter a Judgment of Dismissal for such failure to establish federal jurisdiction.

Respectfully Submitted,

This the 4th day of December 2013.

STILES LAW OFFICE, PLLC.

s/Eric W. Stiles
Eric W. Stiles
Attorney for Defendant
Post Office Box 1565
Bryson City, NC 28713
(828) 538-4564
ericwstiles@gmail.com
N.C. Bar #34430

CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Brief upon all counsel for all parties through the electronic service and filing system for the District Court of the Western District of North Carolina at the following email addresses:

Jack W. Stewart, Jr jack@jackstewartlaw.com, lmcgeary@jackstewartlaw.com

Russell L. McLean, III rlmclean3@aol.com

Thomas R. Ascik thomas.ascik@usdoj.gov, brody.cole@usdoj.gov, jessica.douglass@usdoj.gov

Richard Lee Edwards richard.edwards2@usdoj.gov, Alicia.Shelton@usdoj.gov

Jeff H. Brickman jeff@jeffbrickmanlaw.com

James W. Kilbourne, Jr jwkilbourne@gmail.com, jkilbourne@dunganlaw.com, jwarner@dunganlaw.com

Stephen Lacy Cash scash@roberts-stevens.com, cblackford@roberts-stevens.com

Douglas Warren McDonald, Jr gus@mcdonaldcody.com

Allyn Stockton, Jr lastockton@windstream.net

This the 4th day of December 2013.

    s/Eric W. Stiles
    NC State Bar No. 33430
    Attorney for Defendant
    Stiles Law Office, PLLC.
    P.O. Box 1565
    Bryson City, NC 28713
    Telephone: 828-538-4564
    Fax: 828-538-4565
    E-mail: ericwstiles@gmail.com